**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CANAL INSURANCE COMPANY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-02099-KHV-GEB |
| | ) | |
| | ) | |
| D&M MARKETING, LLC, et al. | ) | |
| | ) | |
| *Defendants*. | ) | |

**CONSENT JUDGMENT**

Before the Court is the Stipulation to Entry of Consent Judgment that was jointly submitted by the parties. Plaintiff Canal Insurance Company ("Canal"), Defendants D&M Marketing, LLC ("D&M Marketing"), the Estate of Anita Rae Rae Munden ("Munden Estate"), L.S., a minor, by and through his mother Shaleah Kauffman, and Ted Suenram as qualified administrator of the estate of Jacob Suenram (together, the "Suenrams") have reached an agreement concerning the issues presented in this declaratory judgment action. Based on the stipulation of the parties and for good cause shown, the Court finds that the relief requested by Canal in its Second Amended Complaint for Declaratory Judgment shall be granted as set forth herein.

**STIPULATED FACTS**

1.      Canal is a South Carolina insurance company with its principal place of business in Greenville, South Carolina such that it is a citizen of South Carolina.

2.      D&M Marketing is a limited liability company organized in the State of Kansas with a principal place of business in Larned, Kansas.  All members of D&M Marketing, including the personal representative of Anita Munden, deceased, and Special Administrator, Kasi Jo Schartz, are citizens of Kansas

1

3.      Kasi Jo Schartz, as Special Administrator of the Estate of Anita Rae Rae Munden (the "Munden Estate") is a citizen of Kansas.

4.      Travis Edwards is a citizen of Kansas.

5.      L.S. is a citizen of Kansas.

6.      Ted Suenram, as qualified administrator of the estate of Jacob Suenram ("Ted Suenram") is a citizen of Kansas.

7.      The Suenrams have asserted claims against D&M Marketing, the Munden Estate, and Edwards arising out of a multi-vehicle accident that occurred on April 5, 2023 on US Highway 50 in Lyon County, Kansas (the "Accident") in which L.S. sustained personal injuries and L.S.'s father, Jacob Suenram, was killed.

8.      Canal issued Policy No. I-72022001-4 (the "Canal Policy") to Named Insured D&M Marketing at its address in Larned, Kansas.

9.      Immediately prior to the Accident, Edwards was operating a commercial truck owned by D&M Marketing (the "D&M Truck") eastbound on Highway US-50. Quintia Rowe was operating another commercial truck owned by Butler Transport, Inc. (the "Butler Truck") travelling eastbound on Highway US-50 behind the D&M Truck.  At the same time, Timothy Hoekstra was operating a Subaru (the "Hoekstra Vehicle") westbound on US-50 with passenger Judith Hoekstra. Ryan Miller was operating a Jeep vehicle (the "Miller Vehicle") westbound on US-50 behind the Hoekstra Vehicle. Jacob Suenram, L.S.'s father, was operating a Ford vehicle (the "Suenram Vehicle") traveling westbound on US-50 behind the Miller Vehicle with L.S. as a passenger.

10.      In the Accident, the D&M Truck struck the Hoekstra Vehicle. The Hoekstra Vehicle then struck the Butler Truck. After striking the Hoekstra Vehicle, the D&M Truck struck the Miller Vehicle and the Suenram Vehicle.

11.    As a result of the Accident, the following claimants asserted claims against D&M Marketing, the Munden Estate, and Edwards:

    a.  The Miller Claimants for the wrongful death of decedent Ryan Miller;

    b.  The Suenram Claimants, including Ted Suenram and L.S., for the wrongful death of decedent Jacob Suenram, the damages of Jacob Suenram suffering prior to his death, as well as the personal injury claims of the surviving minor passenger, L.S.;

    c.  Rowe for personal injuries;

    d.  Butler Transport for property damages to the Butler Truck;

    e.  Aaron and Meredith Stroup for property damage; and

    f.  Timothy Hoekstra and Judith Hoekstra for personal injuries and property damage.

12.    L.S. filed an original Petition against D&M Marketing and Edwards in the District Court of Lyon County, Kansas (the "underlying matter").  In Count I of his original Petition, L.S. alleged negligence against Edwards arising out of the use of the D&M Truck.  In Count II of his original Petition, L.S. alleged a claim of vicarious/respondeat superior liability against D&M Marketing for the negligence of Edwards.

13.    On September 4, 2024, L.S. and Ted Suenram filed their First Amended Petition for Damages against D&M Marketing and Edwards in the District Court of Lyon County, Kansas. L.S. and Ted Suenram allege that D&M Marketing undertook the operation to broker a sale and then the shipment of hay from their property in Larned, KS. In Count I of the First Amended Petition, Ted Suenram asserts a claim of negligence against Edwards arising out of the use of the D&M Truck. In Count II of the First Amended Petition, L.S. asserts a claim of negligence and wrongful death against D&M Marketing. In Count III of the First Amended Petition, L.S. asserts a claim of negligence and wrongful death against Edwards. In Count IV

of the First Amended Petition, Ted Suenram asserts a claim of negligence / respondeat superior against D&M Marketing. In Count V of the First Amended Petition, Ted Suenram asserts a claim of negligence per se against D&M Marketing. In Count VI of the First Amended Petition, Ted Suenram asserts a claim of negligence per se against Edwards. In Count VII of the First Amended Petition, Ted Suenram asserts a claim of negligent hiring, training, entrustment, supervision, and retention against D&M Marketing. In Count VIII of the First Amended Petition, L.S. asserts a claim of negligence / respondeat superior against D&M Marketing.  In Count IX of the First Amended Petition, L.S. asserts a claim of negligence against Edwards. In Count X of the First Amended Petition, L.S. asserts a claim of negligence per se against D&M Marketing. In Count XI of the First Amended Petition, L.S. asserts a claim of negligence per se against Edwards.  In Count XII of the First Amended Petition, L.S. asserts a claim of negligent hiring, training, entrustment, supervision, and retention against D&M Marketing.  All of L.S. and Ted Suenram's claims arise out of and involve the ownership, maintenance, use or entrustment to others of the D&M Truck.

14.    On January 28, 2025, L.S. and Ted Suenram filed their Second Amended Petition for Damages against D&M Marketing, Edwards, and the Munden Estate in the District Court of Lyon County, Kansas. In Paragraph 13 of the Second Amended Petition, L.S. and Ted Suenram allege that Defendant D&M undertook the operation to load and ship hay from their property in Larned, KS to Hidden View Dairy in Rensselaer, Indiana. In Count XIII of the Second Amended Petition, L.S. asserts a claim of negligence and wrongful death against Defendant Munden Estate. In Count XIV of the Second Amended Petition, Ted Suenram asserts a claim of negligence / respondeat superior against Defendant Munden Estate. In Count XV of the Second Amended Petition, Ted Suenram asserts a claim of negligence per se against Defendant Munden Estate. In Count XVI of the Second Amended Petition, Ted Suenram asserts a claim of negligent hiring, training, entrustment, supervision, and retention against

4

Defendant Munden Estate. In Count XVII of the Second Amended Petition, L.S. asserts a claim of negligence / respondeat superior against Defendant Munden Estate. In Count XVIII of the Second Amended Petition, L.S. asserts a claim of negligence per se against Defendant Munden Estate. In Count XIX of the Second Amended Petition, L.S. asserts a claim of negligent hiring, training, entrustment, supervision, and retention against Defendant Munden Estate. All of L.S. and Ted Suenram's claims arise out of and involve the ownership, maintenance, use or entrustment to others of the D&M Truck.

15. The Canal Policy has a Policy Period of April 29, 2022, to April 29, 2023.

16. The Canal Policy was issued to Named Insured "D&M Marketing LLC".

17. The Canal Policy is a multi-part insurance policy with the following coverage parts:

    a. Commercial Automobile Coverage Part;

    b. Commercial General Liability Coverage Part; and

    c. Commercial Inland Marine Coverage Part.

18. The Commercial Automobile Coverage Part of the Canal Policy has a Limit for Liability Coverage in the amount of $1,000,000 Combined Single Limit.

19. The Commercial Automobile Coverage Part of the Canal Policy is subject to the Business Auto Coverage Form which contains the following anti-stacking provision:

**8.    Two or More Coverage Forms or Policies Issued by Us**
If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.  This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

20. The Canal Policy's Commercial General Liability Declarations Item Four lists Code No. 99793 and a Classification Description of "Transportation of property of others for compensation."

5

21.    The Canal Policy's Commercial General Liability Coverage Form provides:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY**
 **1. Insuring Agreement**
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

…

**2. Exclusions**
This insurance does not apply to:

…

**g.    Aircraft, Auto Or Watercraft**
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.
This exclusion does not apply to:
**(1)**    A watercraft while ashore on premises you own or rent;
**(2)**    A watercraft you do not own that is:
    **(a)**    Less than 26 feet long; and
    **(b)**    Not being used to carry persons or property for a charge;
**(3)**    Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;
**(4)**    Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or
**(5)**    "Bodily injury" or "property damage" arising out of:
    **(a)**    The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
    **(b)**    the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

…

**SECTION V – DEFINITIONS**

6

…

**2.**    "Auto" means:

  **a.**  A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

  **b.**  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

  However, "auto" does not include "mobile equipment".

…

**12.**    "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.**  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **b.**  Vehicles maintained for use solely on or next to premises you own or rent;

  **c.**  Vehicles that travel on crawler treads;

  **d.**  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

  **(1)**  Power cranes, shovels, loaders, diggers or drills; or

  **(2)**  Road construction or resurfacing equipment such as graders, scrapers or rollers.

  **e.**  Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

  **(1)**  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well serving equipment; or

  **(2)**  Cherry pickers and similar devices used to raise or lower workers;

  **f.**  Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

  However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  **(1)**  Equipment designed primarily for:

  **(a)** Snow removal;

  **(b)** Road maintenance, but not construction or resurfacing; or

  **(c)** Street cleaning;

  **(2)**  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  **(3)**  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

  However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.  Land

7

vehicles subject to compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

22.    The Canal Policy includes a "Limitation of Coverage to Designated Business Activity" that provides:

### LIMITATION OF COVERAGE TO DESIGNATED BUSINESS ACTIVITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Business Description:**  Transportation of property of others for compensation.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily", "property damage", "personal and advertising injury" and medical expenses arising out of your business activity described in the schedule of this endorsement.

23.    D&M Marketing, the Munden Estate, and Edwards had sought coverage of defense and indemnity from Canal under the Commercial Automobile and Commercial General Liability Coverage Part of the Canal Policy.

24.    Canal does not dispute that the Commercial Automobile Coverage Part may be implicated by the various claims against D&M Marketing, the Munden Estate, and Edwards identified above.

25.    Canal has acknowledged its duty to defend for and retained counsel for D&M Marketing, the Munden Estate, and Edwards under the Commercial Automobile Coverage Part relative to the various claims against D&M Marketing, the Munden Estate, and Edwards identified above.

### STIPULATED CONCLUSIONS OF LAW

1.    This action is within the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 exclusive of interest

and costs and the action is between citizens of different states, in that Canal is a citizen of South Carolina and Defendants are citizens of Kansas.

2.    This action is within the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 2201(a) because Canal's Second Amended Complaint seeks a judicial declaration of the rights, statuses, and legal relations of and among the parties with regard to a contract of insurance and because an actual case and controversy of a justiciable nature exists among the parties.

3.    Venue pursuant to 28 U.S.C. § 1391 and personal jurisdiction over Defendants is proper in this Court because (a) a substantial part of the events giving rise to this dispute (including the Accident) occurred in Kansas; (b) Defendants are citizens and residents of Kansas; and (c) the Canal Policy was delivered to D&M Marketing to its address in Kansas.

4.    To resolve the parties' coverage dispute and to effectuate a prompt and efficient resolution of this declaratory judgment action,  the parties agree that no coverage exists under the Commercial General Liability Coverage Part in the Canal Policy for any claims by the Suenrams against D&M Marketing, Edwards, or the Munden Estate in connection with their alleged conduct, acts, and/or omissions as such claims relate to bodily injury arising out of the use of an "auto".  The Policy contains the Aircraft, Auto or Watercraft Exclusion that expressly excludes coverage for: "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and 'loading or unloading.'  This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft that is owned or operated by or rented or loaned to any insured."  All claims asserted by the

9

Suenrams arise out of and involve the ownership, maintenance, use or entrustment of an auto. Specifically, the Suenrams' allegations against Edwards, D&M Marketing, and the Munden Estate arise out of and involve the ownership, maintenance, use or entrustment of the D&M Truck such that they are excluded by the exclusion.

5.      The parties agree that Canal owes no duty to indemnify or defend D&M Marketing, the Munden Estate, or Edwards under the Commercial General Liability Coverage Part relative to the Suenrams' claims due to the Aircraft, Auto or Watercraft Exclusion of the Commercial General Liability Coverage Part set forth above and owes no duty to indemnify D&M Marketing, the Munden Estate or Edwards under the Commercial General Liability Coverage Part with respect to any judgment that may be entered against them in the underlying matter.

6.      The parties also agree that no coverage exists under the Commercial General Liability Coverage Part in the Canal Policy for any claims by the Suenrams against D&M Marketing, the Munden Estate, or Edwards in connection with bodily injury not arising out of the transportation of property of others for compensation.  The Policy contains the Limitation of Coverage to Designated Business Activity that expressly states that coverage applies only to "'[b]odily injury'… arising out of your business activity described in the schedule of this endorsement."  The Endorsement's Schedule lists a business description of "transportation of property of others for compensation."  The Suenrams' claims that D&M Marketing "undertook the operation to load and ship hay from the property in Larned, KS to Hidden View Dairy in Rensselaer, Indiana" do not arise out of the transportation of property of others for compensation.

7.      The parties further agree that Canal owes no duty to indemnify or defend D&M Marketing, the Munden Estate, or Edwards under the Commercial General Liability Coverage Part relative to L.S.'s and Ted Suenram's claims due to the Limitation of Coverage to

Designated Business Activity of the Commercial General Liability Coverage Part set forth above and owes no duty to indemnify D&M Marketing, the Munden Estate, or Edwards under the Commercial General Liability Coverage Part with respect to any judgment that may be entered against them in the underlying matter.

8.    The parties further agree that the anti-stacking provision of the Commercial Automobile Coverage Part of the Canal Policy provides:

> **8.  Two or More Coverage Forms or Policies Issued by Us**
> If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.  This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

9.    The parties agree that this Consent Judgment shall resolve the question of additional insurance coverage under the Commercial General Liability Coverage Part for the Suenrams' claims beyond the Commercial Auto Insurance Coverage that are asserted against D&M Marketing, the Munden Estate, or Edwards in the underlying matter and the Limit of Insurance of the Canal Policy available for any judgment rendered in the underlying matter.

**THEREFORE**, it is **ORDERED**, **ADJUDGED**, and **DECREED** that

(a) Canal does not owe and has never owed D&M Marketing, the Munden Estate, or Edwards a duty to defend them against the claims asserted by the Suenrams under the Commercial General Liability Coverage Part of the Canal Policy;

(b) Canal does not owe D&M Marketing, the Munden Estate, or Edwards a duty to indemnify them under the Commercial General Liability Coverage Part for the claims asserted by the Suenrams or for any judgment that may be entered on any such claims in the underlying matter; and

(c) each party shall bear its own costs, attorneys' fees, and other expense related to this

declaratory judgment action.

**IT IS SO ORDERED.**

Dated this 11th day of December, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

Stipulated and Agreed by:

**BAKER STERCHI COWDEN & RICE, LLC**

*/s/ Scott D. Hofer*

| | | |
|---|---|---|
| Scott D. Hofer | KS | #15787 |
| Kevin D. Brooks | KS | #25390 |

2400 Pershing Road, Suite 500
Kansas City, MO 64108-2533
(816) 471-2121
(816) 472-0288 (Fax)
Email: shofer@bakersterchi.com
Email: kbroooks@bakersterchi.com
**Attorneys for Plaintiff**

**And**

**DIPASQUALE MOORE, LLC**

*/s/ Garrett J. Tuck*
Garrett J. Tuck, #27569
4600 Madison Ave., Ste. 1200
Kansas City, MO 64112
Phone: 816-888-7500
Fax: 816-888-7519
Email: garrett.tuck@dmlawusa.com
**Attorneys for Defendant L.S. and Ted
Suenram**

**And**

**GARCIA & ANTOSH, LLP**

*/s/ Peter J. Antosh*
Peter J. Antosh - KS#21334
1401 Central
Dodge City, Kansas 67801
(620) 225-7400 P
(620) 225-4339 F
pja22@yahoo.com
**Attorneys for Defendants
D&M Marketing, LLC, and
the Estate of Anita Rae Rae Munden**

13